Cherry Levin
23 Rosewood Court
San Rafael, CA 94901
Phone 415-459-4572

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Cherry Levin, an individual, | ) Civil No. CV 07 6508 |
| Plaintiff, | ) COMPLAINT |
| v. | ) |
| GC Services, LP, Cingular Wireless Corp., Professional Recovery Systems, Inc., and DOES 1-20, inclusive | ) Jury Trial Demanded<br>) 15 U.S.C. § 1692k(d) |
| Defendants. | ) |

**Summary of the Case**

The Plaintiff is a victim of collections harassment, and derogatory credit reporting information furnished by the defendants. The Plaintiff has endured emotional distress, and has been denied credit due to the Defendant's derogatory account on the Plaintiff's credit. The Plaintiff complains and alleges as to all Defendants, and Does 1 through 20, inclusive as follows:

**Parties**

1. Plaintiff Cherry Levin resides at 23 Rosewood Court, San Rafael, CA 94901.

2. Defendant Cingular Wireless Corporation is located at 5565 Glenridge Connector, Atlanta, GA 30349.

3. Defendant Professional Recovery Systems Incorporated is located at 20 Great Oaks Blvd., Suite 240, San Jose, CA 95119.

4. GC Services is a limited partnership with a business address of 6330 Gulfton, Houston, TX 77081.

1

5.  Plaintiff is ignorant of the true names and capacities of defendants sued as Does 1 through 20, and therefore sues those defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained. Plaintiff alleges that each of the fictitiously named defendants is responsible in some manner for the events alleged herein, and that Plaintiff's damages were proximately caused by such defendants.

### Venue & Jurisdiction

6.  Venue is based on 28 U.S.C. §1391(b)(2). This is an action under the Fair Debt Collection Practices Act, (FDCPA) 15 U.S.C. §1692, and the Fair Credit Reporting Act (FCRA). Jurisdiction in this case is based on 15 U.S.C. 1692k. Jurisdiction is based on 28 U.S.C. § 1331.

### Introduction

7.  Plaintiff used a cell phone serviced by Cingular. A bill for $194.80 (Exhibit A) was mailed to, and paid promptly by, the Plaintiff. Cingular debited the Plaintiff's bank account for the bill amount due (Exhibit B). However, Cingular never credited the payment to the Plaintiff's cellular phone account. Five days after the Plaintiff's bank account was debited, the account went into "collections."

8.  Starting 1/14/06, the Plaintiff received several disturbing phone calls from a person named "Tamara," who was an employee of GC Services. The phonecalls consisted of "Tamara" screaming into the phone, demanding the Plaintiff pay the alleged debt. Anytime the Plaintiff attempted to explain to Tamara that the bill was actually paid, Tamara would cut her off, say she did not care, called the Plaintiff a loser, and demand payment.

9.  Plaintiff alleges this constant phone call harassment raised her blood pressure to unhealthy levels, and caused her anxiety attacks on several occasions. The Plaintiff later went to a doctor to obtain antianxiety and blood pressure reducing medicine. (The Doctor's declaration will be submitted at a later point). Despite the evidence the Plaintiff submitted to GC Services showing

2

the debt was already paid (see Exhibit B), GC Services placed a negative collections account on her credit report. The last time GC Services called, the Plaintiff threatened to sue them. This finally stopped the phonecalls, however the collections account remained.

10. Afterwards, the Plaintiff contacted Cingular many times over a three week period to try to have the debt dispute resolved. The plaintiff would sometimes waste up to two hours on the phone with Cingular's customer service department. The plaintiff faxed a copy of the evidence that is attached to this complaint, to Cingular, and GC Services. In spite of the evidence (Exhibits B), Cingular never cleared the collections account.

11. Several months later, on July 21st, 2007, the Plaintiff received a call from Matt, a rep from Professional Recovery Systems. Plaintiff again explained the debt had been paid. The Plaintiff faxed, and sent a certified letter (Article # 7006 3450 0001 9428 1983) of Exhibit B to PRS. She also stated in the letter for PRS not to contact her further about the alleged debt. Unbeknownst to the Plaintiff, around this time PRS put a negative report on the Plaintiff's credit report. The Plaintiff discovered this in November 2007, when she applied for, and was denied, a credit line increase (Exhibit D). The cause in fact for this denial was the collections account erroneously put on her credit report by PRS, from the debt originating with Cingular.

**FIRST CAUSE OF ACTION**
**Violation of FDCPA 15 U.S.C. § 1692c, and 15 U.S.C. § 1692(d)(2)**
**Against Defendant GC Services & PRSystems**

12. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as though fully set forth.

13. Plaintiff alleges GC Services violated 15 USC § 1692c[1] at least three times. The Plaintiff put GC on notice during the second phonecall they made to her, yet they called three more

---

[1] (c) CEASING COMMUNICATION. If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt

3

times with harassing and vulgar language after that notice was given to them. Plaintiff alleges PRS and GC Services violated 15 USC § 1692g[2] by not validating the debt the Plaintiff alleged was already paid.

14. Plaintiff alleges GC Services violated 15 U.S.C. § 1692(d)(2)[3]. GC service's employee, Tamara, was verbally abusive to the Plaintiff every time she contacted her. This included using vulgar language, cutting off the Plaintiff during the phone call, and screaming at her over the phone that she was a "loser that should pay her debts." Plaintiff further alleges GC Services and PRS violated 15 USC § 1692f[4] by knowingly placing derogatory information on the Plaintiff's credit as a means of collecting a debt they knew, or should have known, based on the evidence she submitted to them, was a debt that was already paid.

**SECOND CAUSE OF ACTION**
**Fair Credit Reporting Act 15 U.S.C. § 1681**
**Against All Defendants**

15. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as though fully set forth.

16. Plaintiff alleges both GC Services and PRS are defined by the FCRA as furnishers, and Cingular is defined as a creditor. Plaintiff alleges GC Services and PRS both violated 15 U.S.C. § 1681s-2(A)[5]. All Defendants were put on notice that the original bill was paid, yet all of the defendants ignored this fact and put a negative collections account on the Plaintiff's credit. The

---

[2] (b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.
[3] A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: … (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
[4] A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.
[5] (A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

4

plaintiff's credit was damaged by the Defendant's actions, and resulted in a denial of a credit line increase. Further, this negative report is still on the Plaintiff's credit file and this will continue to cause damage to the Plaintiff when she applies for credit.

17. Plaintiff alleges all Defendants violated 15 U.S.C. § 1681s-2(B)(i) & (ii)[6]. The Plaintiff faxed and mailed the evidence attached in this complaint to all three defendants. In spite of this, the Defendants conspired and willfully placed a negative report on the Plaintiff's credit. When the Plaintiff applied for a credit line increase on her credit card, she was denied. The specific reason given was the negative collections account placed by the defendants (see Exhibit D).

WHEREFORE, Plaintiff prays for judgment as follows.

### First Cause of Action:

1. For Compensatory damages in an amount to be determined by a jury.

2. For actual damages due to the denial of credit based on the erroneous collections account on the plaintiff's credit report.

3. For Plaintiff's cost of this suit.

4. For damages relating to the emotional distress caused by the Defendants.

5. For such other relief as this court deems just, proper, and equitable.

### Second Cause of Action:

1. For Compensatory damages in an amount to be determined by a jury.

2. For punitive damages.

3. For Plaintiff's cost of this suit.

4 For an order by the Court directing all credit reporting bureaus to permanently remove the alleged debt.

---

[6] (B) Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.

5. For Such other relief as this court deems just, proper, and equitable.

Respectfully submitted,

Date: December 27, 2007

*Cherry Levin*
Cherry Levin

### VERIFICATION

I verify under penalty of perjury, that I am the Plaintiff in the above-entitled action. I have read the above complaint and have knowledge of the facts stated therein. I verify that the matters and things stated within the lawsuit are true and correct, except as to those matters stated to be on information and belief, and as to those matters I verify as aforesaid that I verily believe them to be true. Sworn under the penalties of perjury, 28 U.S.C. § 1746.

*Cherry Levin*
Cherry Levin

# ✕ cingular
### raising the bar

**Questions or Changes?**
- cingular.com
- Toll Free 1 866 293-4634
- 611 from your wireless phone
- TTY users - 1 866 429-7TTY

CHERRY LEVIN
23 ROSEWOOD CT
SAN RAFAEL CA 94901-2536

*Exhibit A*
*#1*
*pd. 9/27/05*
*415-497-1552*

Date of Invoice: September 21, 2005

## SUMMARY OF MONTHLY CHARGES FOR ACCOUNT 0041403896

| Previous Balance | Payments Received | Late Payment Charge | Total Adjustments | Balance Forward | Current Monthly Charges |
|---|---|---|---|---|---|
| 191.83 | 0.00 | 2.88 | 0.00 | 191.83 | 2.97 |

| Total Amount Due |
|---|
| 194.80 |

Your billing cycle began on August 21, 2005 and ended on September 20, 2005

**Current Monthly Charges**

| | |
|---|---|
| Monthly Service | 0.00 |
| Monthly Usage | 0.00 |
| Charges | 2.88 |
| Credits | 0.00 |
| Government Fees and Taxes | 0.09 |
| **Total Current Monthly Charges** | 2.97 |

**TOTAL AMOUNT - Due Upon Receipt**                                                194.80

---

*#2*

DATE 9/27/05
PAY TO Cingular
FOR Lilah's cell
AMOUNT THIS CHECK 194.80

DATE 9/27/05
PAY TO Robert
AMOUNT THIS CHECK 130.00

63440

# Bank of America

Exhibit 7

CHERRY P LEVIN  
SAMANTHA LEVIN

Statement Date: October 11, 2005

## ☐ Account Activity   Continued

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Withdrawals, Transfers and Account Fees** | | |
| 09/13 | Wash Client 150   DES:Checkpaymt ID:2977 INDN:8452854824150 Co ID:1680172274 ARC Ref:020052555037190 | | $1,150.80 |
| 09/16 | Cingular         DES:Check Pymt ID:2992 INDN:000002007121599         Co ID:2004020303 ARC Ref:020052590192508 | | 313.30 |
| 09/19 | Check Printing Charge (includes Delivery Charges And All Applicable Taxes) | | 43.66 |
| 09/23 | Sams Club/Gemb   DES:Checkpaymt ID:3002 INDN:XXXXXXXXXXXXXXXXX93935   Co ID:0818200401 ARC Ref:020052652283010 | | 54.71 |
| 09/29 | Telephone Transfer to Checking 16919-09066 VRU | | 100.00 |
| 10/03 | Cingular         DES:Check Pymt ID:3018 INDN:000000041403896         Co ID:2004012803 ARC Ref:020052760593137 | | 194.80 |
| 10/05 | Telephone Transfer to Checking 16919-09066 VRU | | 50.00 |
| | *Total Withdrawals, Transfers and Account Fees* | | $1,907.27 |
| 10/11 | **Interest Paid** Interest Paid from 09/13/05 Through 10/11/05 | | $.20 |

## ☐ Daily Balance

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 09/13 | $ 3,281.64 | 09/23 | 816.45 | 10/04 | 103.65 |
| 09/14 | 1,582.27 | 09/26 | 1,012.68 | 10/05 | 8,043.65 |
| 09/15 | 1,319.29 | 09/27 | 987.68 | 10/06 | 7,640.94 |
| 09/16 | 464.49 | 09/28 | 830.41 | 10/07 | 7,459.94 |
| 09/19 | 2,552.60 | 09/29 | 1,192.41 | 10/11 | 2,035.08 |
| 09/20 | 2,526.93 | 09/30 | 641.25 | | |
| 09/22 | 871.16 | 10/03 | 446.45 | | |

## ☐ Overdraft Protection Plan

BankAmericard Visa 4888-6032-1573-8832             Overdraft coverage available $12,800.00

## ☐ Bank of America: In Balance

To assist you in reconciling your account, we have provided the following summary information.
A reconciliation worksheet is printed on the reverse of this page.

- Your ending balance from this statement ............................................................................................................$2,035.08
- **Add**   interest paid to your checkbook register............................................................................................. 0.20
- **Subtract**   check printing charge from your checkbook register.............................................................................. 43.66



Exhibit C

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _[signature]_  ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br>Professional Recovery<br>Systems<br>80 Great Oak Blvd.<br>Suite 240<br>San Jose, CA 95119 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Transfer from service label) | 7006 3450 0001 9428 1983 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Exhibit D

Chase Bank USA, N.A.
PO Box 15077
Wilmington DE  19886-5077



November 11, 2007



19189 AAL 001 001 31507  NNNNNNNNNNNN
CHERRY P LEVIN
2337 GALAHAD DR
BATON ROUGE LA  70816-2412

CA153

Reference Number

5401683054654543

Dear CHERRY P LEVIN :

As a credit provider to you, we value your business. Your request for a credit-line increase was given thoughtful consideration by Chase Bank USA, N.A..

We regret that we are unable to approve your request at this time. The reason(s) for our decision are as follows:

> Your credit report reflects charge off(s) or bad debt collection(s)

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. The reporting agency did not make the credit decision and is unable to provide you with the specific reasons for our decision.

Equifax
P O Box 740241
Atlanta, GA  30374-0241
(800) 685-1111
http://www.credit.equifax.com

You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after receiving this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

If you later advise us that corrections have been made to your credit bureau report, we will be happy to evaluate a new request for a credit-line increase. If you want to submit a new request you may call us at the telephone number noted below. When we receive your request, we will obtain a current credit bureau report and conduct a new evaluation on your behalf.

We hope to have the opportunity to serve your credit needs in the future. If you have additional questions, please contact us at the address noted above or call us at 1-877-882-1890 within 30 days of the date of this letter. We are available Monday through Friday between the hours of 8:00 a.m. and 8:00 p.m., and Saturday and Sunday between the hours of 8:00 a.m. and 5:00 p.m., Eastern Time

Sincerely,

Chase Bank USA, N.A.

**Please see the reverse side of this document for important information**