Richard A. De Liberty (Bar No. 203754)
Kohut & Kohut LLP
3554 Round Barn Boulevard, Suite 204
Santa Rosa, California 95403
tel.: (707) 573-3100
fax: (707) 573-3101
e-mail: richard@kohutlaw.com

Attorneys for Defendant
NEW CINGULAR WIRELESS SERVICES, INC.[1]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHERRY LEVIN, | No. 07-CV-6508-JSW |
| Plaintiff, | Hearing: February 29, 2008, 9:00 a.m |
| v. | **MOTION BY DEFENDANT CINGULAR TO DISMISS FOR FAILURE TO STATE A CLAIM OR. ALTERNATIVELY, FOR A STAY PENDING ARBITRATION** |
| GC SERVICES, LP, et al., | |
| Defendants. | |

**I.   Notice of Motion**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that this motion will be brought on for hearing on Friday, February 29, 2008, at 9:00 a.m., in Courtroom 2, United States Courthouse, 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102.

---

[1] The Complaint mistakenly names New Cingular Wireless Services, Inc., as "Cingular Wireless Corp."

**II.     Relief Sought**

Defendant New Cingular Wireless Services, Inc., ("Cingular") moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the action by Plaintiff, Cherry Levin, against Cingular, because the Complaint fails to state a claim against Cingular upon which relief can be granted. Alternatively, Cingular moves the Court pursuant to 9 U.S.C. § 3 for a stay pending arbitration. The motion to dismiss is made on the grounds that:

1. Ms. Levin's sole claim against Cingular, as alleged in the Second Cause of Action, is for violation of 15 U.S.C. § 1681s-2(a)(1)(B)[2] (Compl. ¶ 17), but:

    a. Private litigants cannot sue for violations of 15 U.S.C. § 1681s-2(a)(1)(B), *see* 15 U.S.C. § 1681s-2(c); and

    b. The Complaint does not state a violation of 15 U.S.C. § 1681s-2(a)(1)(B) against Cingular, because Ms. Levin alleges that Defendants GC Services and PRS—*not* Cingular—furnished inaccurate information about her to Equifax, (*see* Compl. ¶ 9).

2. The written contract between Cingular and Ms. Levin contains an arbitration provision requiring all disputes between them to be submitted to binding arbitration, (*see* Decl. Ex. B ¶ 5). The arbitration provision is grounds for the alternative motion to stay, as well as dismissal.

---

[2] The Complaint omits the "(a)(1)" from its citation to 15 U.S.C. § 1681s-2(a)(1)(B), (*see* Comp. ¶ 17), but quotes from that provision, (*see* Compl. ¶ 17 n.5).

– 2 –

MOTION TO DISMISS OR STAY PENDING ARBITRATION—NO. 07-CV-6508-JSW

**III. Memorandum**

    **A. Issues**

        1. Is Ms. Levin's sole claim against Cingular, for violation of 15 U.S.C. § 1681s-2(a)(1)(B), prohibited by 15 U.S.C. § 1681s-2(c)?

        2. Does Ms. Levin fail to state a violation of 15 U.S.C. § 1681s-2(a)(1)(B) against Cingular because she does not allege that Cingular furnished information about her to a consumer reporting agency?

        3. Should the action against Cingular be dismissed or stayed because Ms. Levin breached her contractual obligation to submit disputes with Cingular to arbitration, instead of suing in court?

    **B. Facts**

On June 7, 2002, Plaintiff, Cherry Levin, entered an agreement for wireless services with Cingular's predecessor, AT&T Wireless Services, Inc., ("Agreement").[3] (Bryant Decl. Ex. A.) Paragraph 5 of the Terms and Conditions to the Agreement requires binding arbitration, with limited exceptions, of "all disputes or claims arising out of our relationship." (Bryant Decl. Ex. B ¶ 5.a.) On December 31, 2007, Ms. Levin filed this federal court action against Cingular, as well as GC Services and PRS.

According to the Complaint, on September 21, 2005, Cingular sent Ms. Levin an invoice for $194.80, (Compl. ¶ 7; Ex. A), and on October 3, 2005, automatically debited that amount from her bank account, (Compl. ¶ 7; Ex. B.) Ms. Levin alleges, however, that Cingular did not credit her account with

---

[3] Under the "incorporation by reference" doctrine, a court may consider facts not alleged on the face of the complaint or contained in documents attached to the complaint, if the plaintiff's claim depends on the document's contents and its authenticity is not disputed. *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998). Here, Ms. Levin does not attach the Agreement to the Complaint, but she alleges that she was Cingular customer and the Agreement is signed by her. In addition, extrinsic evidence is proper on a motion to stay pending arbitration.

– 3 –

the payment, and the account "went into 'collections.'" (Compl. ¶ 7.) Ms. Levin alleges that, at this point, Defendant GC Services began making "disturbing phone calls" in an effort to collect the alleged debt and, ignoring evidence that the debt had been paid, "placed a negative collections account on her credit report." (Compl. ¶¶ 8–9.) Later, Ms. Levin alleges, Defendant Professional Recovery Systems ("PRS") contacted her in an effort to collect the debt. (Compl. ¶ 11.) She alleges that PRS also ignored evidence of payment and "put a negative report on the Plaintiff's credit report." (Compl. ¶ 11.)

In November 2007, Ms. Levin alleges, she "applied for, and was denied, a credit line increase" because of "the collections account erroneously put on her [Equifax] credit report by PRS, from the debt originating with Cingular." (Compl. ¶ 11; Ex D.) Ms. Levin does *not* allege that Cingular itself furnished any information about her account to any credit reporting agency. (*See* Compl. ¶¶ 9, 11.) Ms. Levin also does *not* allege that she notified Equifax that she disputed the information in her credit report. (*See* Compl. ¶ 11.)

### C. Argument

#### 1. Ms. Levin has no standing to sue for violation of 15 U.S.C. § 1681s-2(a)(1)(B).

Ms. Levin's sole claim against Cingular is for violation of the Fair Credit Reporting Act (FCRA), specifically 15 U.S.C. § 1681s-2(a)(1)(B). Section 1682s-2 defines the responsibilities of what the FCRA calls "furnishers": entities that furnish information to credit reporting agencies. Subsection (a) describes a furnisher's general obligations to provide accurate information to credit reporting agencies. Private litigants cannot sue furnishers for violations under subsection (a). 15 U.S.C. § 1681s-2(c). On the contrary, subsection (a) "carefully prevents a consumer from suing a furnisher of even information known by the furnisher to be inaccurate." *Nelson v. Chase Manhattan Mortgage Co.,* 282 F.3d 1057, 1059–60 (9th Cir. 2002). Since Ms. Levin has no right of action under 15 U.S.C. § 1681s-2(a)(1)(B), her action against Cingular should be dismissed.

#### 2. Ms. Levin cannot state a claim against Cingular for a violation of subsection (b) of section1681s-2, and does not purport to.

A consumer who disputes the accuracy of information in her credit report must follow the procedures of 15 U.S.C. § 1681i. First, the consumer must notify the consumer reporting agency of her dispute. *See* 15 U.S.C. § 1681i(a)(1)(A). Then, unless the agency finds the dispute frivolous, the agency

– 4 –

1  notifies the furnisher who provided the disputed information. *See* 15 U.S.C. § 1681i(a)(2). When a furnisher receives such a notice from a consumer reporting agency, the furnisher must complete certain investigations, reviews, and reports under subsection (b) of section 1681s-2. Unlike subsection (a), private litigants *can* sue furnishers for violations of subsection (b). *See Nelson,* 282 F.3d at 1059–60. Ms. Levin, however, does not purport sue Cingular for a violation of subsection (b).

More to the point, based on the allegations of the Complaint, Ms. Levin cannot state a claim against Cingular for a violation of subsection (b) of section 1681s-2. First, Ms. Levin does not allege that she notified Equifax that she disputed the accuracy of information in her credit report, or otherwise complied with 15 U.S.C. § 1681i—a prerequisite for claiming a violation of 15 U.S.C. § 1681s-2(b). Second, Ms. Levin alleges that it was GC Services and PRS who provided the disputed information to Equifax. Thus, under 15 U.S.C. § 1681i(a)(2), Equifax would have notified GC Services and PRS of the dispute, not Cingular. Any obligations Cingular might have under 15 U.S.C. § 1681s-2(b) would never be triggered. Third, even if Cingular received a dispute notice from Equifax, it would still have no obligations under subsection (b) because Cingular did not furnish the disputed information. *See* 15 U.S.C. § 1681s-2(b)(1). Fourth, even Cingular was required to complete the investigations, reviews, and reports required under subsection (b), Ms. Levin does not allege that it failed to do so.

### 3. Ms. Levin is required to submit all disputes against Cingular to binding arbitration, instead of suing in court.

When an arbitration provision is broad enough to bar all of a plaintiff's claims in federal court, dismissal is an available and appropriate remedy. *Chappel v. Lab. Corp. of Am.,* 232 F.3d 719 (9th Cir. 2000); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir. 1988); *Martin Marietta Alum., Inc. v. Gen. Elec. Co.,* 586 F.2d 143, 147–48 (9th Cir. 1978). Here, the Agreement requires binding arbitration of "all disputes or claims arising out of" the relationship between Ms. Levin and Cingular, with limited exceptions that do not apply here. (Decl. Ex. B ¶ 5.a.) The Court should therefore dismiss this action as against Cingular. In the alternative, the Court should stay the action as against Cingular pursuant to 9 U.S.C. § 3.

**D.** **Conclusion**

Because Ms. Levin lacks standing to bring her sole cause of action against Cingular, for violation of 15 U.S.C. § 1681s-2(a)(1)(B), and because Ms. Levin breached the written contract between her and Cingular by filing this lawsuit, the Court should grant this motion and dismiss this action as against Cingular.

DATED: January 22, 2008

                              KOHUT & KOHUT LLP

                              /s/ Richard A. De Liberty
                              Richard A. De Liberty
                              Attorneys for Defendant
                              New Cingular Wireless Services, Inc.