Richard A. De Liberty (Bar No. 203754)
Kohut & Kohut LLP
3554 Round Barn Boulevard, Suite 204
Santa Rosa, California 95403
tel.: (707) 573-3100
fax: (707) 573-3101
e-mail: richard@kohutlaw.com

Attorneys for Defendant
NEW CINGULAR WIRELESS SERVICES, INC.[1]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHERRY LEVIN,<br><br>                    Plaintiff,<br><br>v.<br><br>GC SERVICES, LP, et al.,<br><br>                    Defendants. | No. 07-CV-6508-JSW<br><br>Hearing: March 28, 2008, 9:00 a.m<br><br>**REPLY IN SUPPORT OF MOTION BY DEFENDANT CINGULAR TO DISMISS FOR FAILURE TO STATE A CLAIM OR. ALTERNATIVELY, FOR A STAY PENDING ARBITRATION** |

    Ms. Levin's opposition offers basically three points, none of which has merit. First, she misleadingly suggests that the complaint refers to subsection (b) of section 1681s-2, under which she would have a private cause of action; in fact, in refers only to subsection (a), under which there is no private cause of action. Second, she asserts that the arbitration clause is unconscionable, misleadingly citing a case that deals with class waivers, not arbitration agreements; the arbitration clause is not unconscionable. Third, although she concedes that she does not allege facts sufficient to sustain a claim under subsection (b), she implies that she could amend to do so; in fact, she could not without contradicting the allegations of the complaint, which effectively concedes that Cingular did not provide

---

[1] The Complaint mistakenly names New Cingular Wireless Services, Inc., as "Cingular Wireless Corp."

the disputed information to Equifax. Cingular's motion to dismiss or, alternatively, compel arbitration, should be granted.

### A. The complaint purports to allege a violation of subsection (a) of section 1681s-2, not subsection (b).

As mentioned in Cingular's opening brief, Ms. Levin's complaint contains a clerical error. (*See* Mem. at 2 n.2.) The complaint alleges that defendants violated "15 U.S.C. § 1681s-2(B)(i)&(ii)," (Compl. ¶ 17), but the citation is incomplete: section 1681s-2 contains several subparagraph (B)s. It is nonetheless clear which of those subparagraph (B)s Ms. Levin intended to cite, because she quotes it, and the provision she quotes is 15 U.S.C. § 1681s-2*(a)(1)*(B)(i)–(ii). (Compl. ¶ 17 n.6.) Also, section 1681s-2(a)(1)(B) is the only subparagraph (B) that has clauses (i) and (ii), as Ms. Levin's citation does. Thus, contrary to Ms. Levin's assertion in her opposition, her complaint alleges no violation of subsection (b) (as opposed to *subparagraph* (B)), but only subsection (a). (*See* Opp. at 1.) As Ms. Levin effectively concedes, individual consumers, like her, have no right of action under subsection (a). (Mem. at 4.)

### B. The arbitration clause is not unconscionable.

Ms. Levin argues that the Ninth Circuit "has held Cingular's arbitration clause as consumer contracts of adhesion," and "unconscionable," referring to *Shroyer v. New Cingular Wireless Services, Inc.,* 498 F.3d 976 (9th Cir. 2007). (Opp. at 2.) This is not accurate. The challenged provision in *Shroyer* was a class action waiver, not an arbitration agreement.[2] The contract provided that if the class action waiver was invalidated, the entire arbitration agreement was "null and void." *Id.* at 980, 986–87. The court in *Shroyer* found that the class action waiver was unenforceable and*, because of the nonseverability clause,* held that the arbitration agreement was void. *Id.* at 976. The implication is that

---

[2] The contracts in *Shroyer* and this case are substantially different from one another.

the court otherwise would have enforced the arbitration agreement, and there is no reason to think it would not have.[3]

In fact, based on the well-established analysis, the arbitration clause here is not unconscionable. For an agreement to be unconscionable, it must be so both procedurally and substantively. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005). The burden to prove this is on the party challenging the agreement. *Id.* Ms. Levin asserts that the arbitration agreement is adhesive, which would make it unconscionable procedurally. It is not, however, adhesive. For a provision to be deemed adhesive, the challenged provision must be standard in other similar agreements. *West v. Henderson*, 227 Cal. App. 3d 1578, 1586 (1991). This, too, is the challenging party's burden to prove. *Id.* Ms. Levin submits no evidence that arbitration clauses are standard in the service agreements of other wireless providers.[4]

The arbitration agreement here is also not unconscionable substantively. To show otherwise, the plaintiff would have to show basically that the agreement was "unfairly one-sided." *Discover Bank,* 36 Cal. 4th at 160. The arbitration clause here is not one-sided at all, and Ms. Levin does not argue otherwise. Therefore, even if it were adhesive, the arbitration agreement is still not unconscionable, and must be enforced.

### C. Even under liberal pleading standards, the complaint fails to state a claim against Cingular upon which relief can be granted.

Ms. Levin asserts that the complaint is sufficient to put Cingular on notice "of what Plaintiff's claim is, and what statutes it is based on." (Opp. at 2:15.) Even in her opposition, however, she does not

---

[3] In fact, arbitration agreements are enforceable as to class actions unless the arbitration agreement expressly forbids class arbitration. If an arbitration agreement is silent on the issue, as interpreted by the arbitrator, the arbitration agreement is enforced. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 170–71 (2005).

[4] In fact, the standard service agreements of Virgin Mobile and TracFone do not include arbitration agreements.

explain what that claim might be. Ms. Levin *concedes* that the complaint does not allege sufficient facts to state a claim under 15 U.S.C. § 1681s-2(b). (Opp. at 1:16–17.) She points to no other possible clam.

Ms. Levin will not be able to amend to allege a violation of subsection (b) of section 1681s-2. She asserts now that, although she does not allege it, she did contact "the credit bureaus." (Opp. at 1:16–17.) She does not, however, assert that she contacted them about an entry by Cingular, as opposed to GC Services or PRS. In fact, the complaint alleges that Equifax received inaccurate information from GC Services and PRS, but conspicuously not Cingular. (*See* Compl. ¶¶ 9, 11.) The implication is that Cingular did *not* provide the disputed information to Equifax. Her assertion now that she could allege otherwise contradicts the allegations of the complaint.[5] (*See* Opp. at 1.)

### Conclusion

For the reasons stated here and in Cingular's opening memorandum, the Court should grant this motion and dismiss this action as against Cingular.

DATED: February 19, 2008

        KOHUT & KOHUT LLP

        /s/ Richard A. De Liberty
        Richard A. De Liberty
        Attorneys for Defendant
        New Cingular Wireless Services, Inc.

---

[5] Ms. Levin's Equifax credit report would likely show who provided the disputed information, but Ms. Levin fails to attach it to the complaint.